THE UTICA CITY NATIONAL BANK, Respondent, v. JOHN K. GUNN, Appellant.

**Guaranty — bond by guarantor to pay all loans and discounts made by a bank, or renewals or part renewals thereof — when such guarantor liable for renewals of loans which were made previous to execution of the bond.**

A guarantor bound himself "to pay all loans and discounts or renewals or part renewals thereof" made by a bank to a corporation on whose behalf the guaranty was made, in case of the failure of such corporation to pay the same, "so promising on the consideration that the said party of the first part (the bank) shall and does make such loans and discounts in consideration of the execution and delivery of this agreement by us and each of us." No new loans were made but previous loans were renewed. *Held*, that upon the facts proven a jury could fairly draw the inference that the guarantor had knowledge of the circumstances leading to the exaction of the bond in the light of which it must be construed, and that whether the language of the guaranty contemplated renewals of indebtedness then existing or only renewals of loans thereafter made, is a question for the jury.

*Utica City Nat. Bank* v. *Gunn*, 169 App. Div. 295, affirmed

(Argued December 18, 1917; decided January 8, 1918.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered

July 7, 1915, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*A. Leo Everett* for appellant. The guaranty relates to future loans and discounts and not to renewals of antecedent notes. (*Rudd* v. *Robinson,* 126 N. Y. 113; *Bank* v. *Dean,* 154 App. Div. 869; *Thayer* v. *Schley,* 137 App. Div. 166.) The renewal of an old note does not constitute a loan or discount. (*A. S. Bank* v. *Savery,* 82 N. Y. 291; *Nat. Bank* v. *Johnson,* 104 U. S. 271; *F. Nat. Bank* v. *Carleton,* 43 App. Div. 6; *Glyn* v. *Hertel,* 8 Taunt. 208; *Dunn* v. *O'Connor,* 25 App. Div. 73; *Brown* v. *M. Nat. Bank,* 169 U. S. 416; *Bramblette* v. *Deposit Bank,* 76 S. W. Rep. 193; *Limerock Bank* v. *Hewitt,* 52 Maine, 531; *Jagger Iron Co.* v. *Walker,* 76 N. Y. 521; *Nat. Bank* v. *Thomas,* 220 Penn. St. 360.) A contract of guaranty will not be construed to apply to a past indebtedness unless it so expressly provides. (*People* v. *Lee,* 104 N. Y. 441; Brandt on Suretyship and Guaranty, § 108.) The instrument of guaranty being complete and unambiguous, its construction could not be affected by extrinsic testimony. (*Trustees of Southampton* v. *Jessup,* 173 N. Y. 84; *Morrell* v. *Cowan,* L. R. [7 Ch. Div.] 151; *Wallach* v. *Riverside Bank,* 206 N. Y. 434; *Stanton* v. *Granger,* 125 App. Div. 174; 193 N. Y. 656.)

*Charles T. Titus* for respondent. The nonsuit at the Trial Term was error. (*Ringe* v. *Judson,* 24 N. Y. 64.) Intent of the parties; the construction they themselves put upon the contract; the manner in which they worked the contract, all are important factors. (*Wesp* v. *Muckle,* 136 App. Div. 241; *F. N. Bank* v. *Jones,* 219 N. Y. 312.)

CARDOZO, J. This action is brought upon a guaranty signed by the defendant and others in the following form:

" Articles of Agreement this 12th day of December, 1912, between The Utica City National Bank of Utica, Oneida County, State of New York, party of the first part, and the Utica Pipe Foundry Company, party of the second part.

" *Witnesseth:* Whereas the Utica Pipe Foundry Company requires from time to time loans and discounts from the said party of the first part, and the said party of the first part requires security and guaranty for the payment of such loans and discounts so made, now we, John A. Kernan, and John K. Gunn, of Utica, N. Y., and Chas. G. Wagner of Binghamton, N. Y., do jointly and severally bind ourselves and our representatives to pay all loans and discounts or renewals, or part renewals thereof, made by the said party of the first part to said Utica Pipe Foundry Company, on its failure to pay the same; so promising on the consideration that the said party of the first part shall and does make such loans and discounts in consideration of the · execution and delivery of this agreement by us and each of us. The liability of the guarantors whose names are hereunto subscribed, shall not exceed in amount the sum of one hundred and fifteen thousand dollars ($115,000) on account of this guaranty, with interest on the amounts borrowed.

" Dated, Utica, N. Y.

" JOHN A. KERNAN    [L. s.]
" JOHN K. GUNN    . [L. s.]
" CHAS. G. WAGNER   [L. s.] "

At the date of this guaranty the plaintiff held the notes of the Utica Pipe Foundry Company for loans and discounts already made. There were no new loans or discounts after the delivery of the bond. There were, however, some renewals of previous loans and discounts. The old notes were surrendered, and new notes delivered. The question is whether the defendant's obligation under the bond extends to such renewals.

To ascertain the meaning of this contract, we must recall the surrounding circumstances. The limit of liability stated in the bond, $115,000, is the exact sum then due for previous loans and discounts. The bank examiner had suggested that the loans ought to be secured. The bank prepared this bond to silence the examiner's criticism. It filled in a printed form. A letter to the treasurer of the Utica Pipe Foundry Company explained the situation. The explanation was coupled with a statement that the notes would be renewed. There is evidence justifying the inference that these things were known to the defendant. He was a director of the corporation; he had knowledge of the state of its finances; he was told that the bank required the bond of the directors; he knew that some had refused to sign; and he and the treasurer talked of their refusal. The conversation is not stated fully or precisely, but the purpose of the transaction can hardly have been unknown. The slightest inquiry would have revealed it. One does not commonly put one's hand to a bond for $115,000 without some appreciation of the needs of the occasion. The defendant does not say that he was guilty of such folly. There was no thought of a new loan. The sole end to be attained was the safety of the old loan. This the defendant must have understood. A jury could fairly draw the inference that he had knowledge of the circumstances leading to the exaction of the bond.

In the light of those circumstances, therefore, the bond must be construed. The rule of construction is not changed because the defendant is a surety ( *Ulster Co. Savings Inst.* v. *Young*, 161 N. Y. 23; *Gates* v. *McKee*, 13 N. Y. 232, 237). We may concede that the words, when viewed alone, apart from the setting of the occasion, give support to the defense. The promise is made " on the consideration that the party of the first part shall and does make such loans and discounts in considera-

tion of the execution and delivery of this agreement by us and each of us.". This looks to the future. It excludes the past. Unless loans or discounts have been made on the faith of the bond, the consideration for the promise fails. But loans and discounts in their proper legal meaning do not include renewals. A renewal is not a loan. It is an extension of the time of payment (*Brown* v. *Marion Nat. Bk.*, 169 U. S. 416). The loan is made but once, and that is when the first note of the series is given. For like reasons a renewal is not in the strict sense a discount. A discount is a loan coupled with a deduction of the interest (*Nat. Bank* v. *Johnson*, 104 U. S. 271, 276). There can be no deduction of interest when no money is paid by the lender from which interest can be deducted.

The proper legal meaning, however, is not always the meaning of the parties. Surrounding circumstances may stamp upon a contract a popular or looser meaning. The words loans and discounts are not so clear and certain that circumstances may not broaden them to include renewals. They often have that meaning in the language of business life. In the thought of business men, to renew a loan or discount is to make it over again, but none the less to make it. Especially is that so where, as here, a new note is given at each renewal, and interest paid. The triers of the facts must fix the sense in which the words were used in the contract now before us (*Kenyon* v. *Knights Templars & M. M. Aid Assn.*, 122 N. Y. 247; *Lamb* v. *Norcross Bros. Co.*, 208 N. Y. 427; *Rankin* v. *Fidelity Ins., Trust & S. D. Co.*, 189 U. S. 242, 253). To take the primary or strict meaning is to make the whole transaction futile. To take the secondary or loose meaning, is to give it efficacy and purpose. In such a situation, the genesis and aim of the transaction may rightly guide our choice (4 Wigmore on Ev. § 2470; Stephen, Digest of Law of Ev., art. 91, subds. 5 and 6).

The point is made that earlier clauses of the bond exclude the broader meaning. It is said that the parties have themselves distinguished between loans or discounts and renewals. The defendant is to pay "all loans and discounts or renewals or part renewals thereof;" in consideration of this payment, the plaintiff is to make "loans and discounts" on the faith of the bond. If renewals or part renewals were to be consideration, they should have been mentioned again. The failure to repeat them means that the only renewals which the defendant is to pay are renewals of new loans and discounts. That is the defendant's argument. Its force, we think, is not controlling. The mention of renewals and part renewals in other clauses of the bond does not of necessity exclude them from the definition of loans and discounts. On the contrary, it may indicate a purpose to include them. The words may have been added, not to point a contrast or a distinction, but to amplify and explain. They have been used for greater certainty, to show the comprehensive sense in which loans and discounts were to be taken. "Or" may then be read as equivalent to "including." If that was the thought, it was unnecessary to repeat the definition. The gloss, once placed upon the words, would hold good throughout the contract. Renewals had already been stated to be included. It might be taken for granted that they would not thereafter be excluded. What weight would be given to the failure to repeat the admonition was for the triers of the facts (*Kenyon* v. *Knights Templar & M. M. Aid Assn., supra; Lamb* v. *Norcross Bros. Co., supra*). Verbal niceties might yield in their minds to the overmastering consideration that unless related to past loans, the obligation of the bond was a vain and empty form. It is easier to give a new shade of meaning to a word than to give no meaning to a whole transaction.

The order of the Appellate Division should be affirmed,

and judgment absolute ordered against the appellant upon the stipulation with costs in all courts.

CHASE, CUDDEBACK and POUND, JJ., concur; COLLIN, CRANE and ANDREWS, JJ., dissent.

Order affirmed, etc.